## UNITED STATES ex rel. STABLER v. WATKINS.

### No. 263, Docket 20974.

Circuit Court of Appeals, Second Circuit.

June 14, 1948.

George C. Dix and David S. Kumble, both of New York City, for appellant.

John F. X. McGohey, U. S. Atty., of New York City (Harold J. Raby, Asst. U. S. Atty., of New York City, of counsel), for appellee.

Before SWAN, CLARK and FRANK, Circuit Judges.

SWAN, Circuit Judge.

The relator, Oscar R. Stabler, is a native born German who legally entered the United States in 1923 and became a naturalized citizen ten years later by order of the United States District Court for the Eastern District of New York. In 1941 he pleaded guilty to a violation of the Foreign Agents Registration Act,[1] was sentenced to imprisonment for five years, and in 1942 began service of the sentence in the Correctional Institution at Milan, Michigan. On March 30, 1943, while he was so imprisoned, the United States commenced a proceeding in the District Court of the United States for the District of New Jersey to cancel his certificate of naturalization on the ground of fraud in its procurement. The complaint alleged that he "resides" at 851 Boulevard East, Weehawken, New Jersey.[2] Service therein was had by pub-

[1] 22 U.S.C.A. § 611 et seq.

[2] A similar proceeding had been filed in the United States Court for the Eastern District of New York on January 28, 1943, alleging that he resides at 2041 Linden Street, Brooklyn. This suit was withdrawn in May 1943.

lication and a copy of the complaint was handed to him [3] at the prison. Thereafter, in August 1943, a default judgment cancelling his citizenship was entered by the court in New Jersey. On release from imprisonment in September 1945, he was arrested for internment as a potentially dangerous alien enemy under a warrant issued by the Attorney General pursuant to 50 U.S.C.A. § 21 and Presidential Proclamation No. 2526. Under this warrant he was held in the respondent's custody at Ellis Island, when the present habeas corpus proceeding was commenced on September 20, 1945. The return to the writ was filed in April 1946, a hearing was held in August 1946, and an order discharging the writ was entered March 22, 1947. The relator appealed in May 1947, but the record on appeal was not filed until March 15, 1948.

The appellant attacks the legality of his internment on the ground that he is still a naturalized citizen because the proceedings in New Jersey were void for lack of jurisdiction, since he was a resident of Brooklyn in 1943 and had never resided in New Jersey. He so testified at the habeas corpus hearing. The respondent put in evidence the record of the proceedings in New Jersey. This shows that the district court based its order of service by publication on two affidavits. One of these by Thorn Lord, an Assistant United States Attorney, relies upon statements in the other affidavit by Leo Heitler. Heitler's affidavit states: "I have been advised by Mr. Jack London of the U. S. Department of Justice who purported to know of defendant and his whereabouts, that defendant's last residence was at 851 Boulevard East, Weehawken, N. J." In the habeas corpus proceeding the district judge did not determine where the relator resided at the date of the New Jersey proceeding. He held that whatever the "claimed irregularities" in that proceeding, the judgment entered therein could not be attacked collaterally by habeas corpus.

Proceedings for the revocation of naturalization are authorized by the Nationality Act of 1940, 8 U.S.C.A. § 738(a). The suit may be brought "in any court specified in subsection (a) of section 701 of this title in the judicial district in which the naturalized citizen may reside at the time of bringing suit." [4] Subsection (b) of § 738 provides for service of summons by publication, "if such naturalized person be absent from the United States or from the judicial district in which such person last had his residence." It is apparent, therefore, that the federal district court in New Jersey lacked jurisdiction to revoke Stabler's naturalization, unless he "last had his residence" in New Jersey on March 30, 1943, when the suit was brought. If the lack of jurisdiction were apparent on the face of the New Jersey record, the judgment of revocation would be void and Stabler could attack the legality of his internment by habeas corpus. United States ex rel. Volpe v. Jordan, 7 Cir., 161 F.2d 390, 392. He argues that that case is precisely in point, but in that he is in error. In the Volpe case it was apparent on the face of the record that Volpe had not been given the "sixty days' personal notice in which to make answer to the petition of the United States," required by 8 U.S.C.A. § 738(b). It was on this ground that the order of revocation was held void. In the case at bar, however, there is nothing in the New Jersey record to show that Stabler "last had his residence" in Brooklyn, N. Y. On the contrary, the record shows, though only by affidavits based on hearsay, that he last resided in Weehawken, N. J. The question presented is whether on such a record the default judgment may be attacked collaterally by habeas corpus.

The answer to this question is difficult and doubtful. In Sunal v. Large, 332 U.S. 174, 179, 67 S.Ct. 1588, 1591, 91 L.Ed. 1982, the Supreme Court has recently said that "where the jurisdiction of the federal court which tried the case is challenged * * * habeas corpus is increasingly denied in case an appellate procedure was available for the correction of the er-

---

[3] On receipt of the copy of the complaint Stabler wrote to the United States Attorney in New Jersey that he did not intend to contest the suit.

[4] District Courts of the United States are among the courts specified in 8 U.S. C.A. § 701(a).

ror." Although the time to appeal from the default judgment had long expired when the appellant brought his habeas corpus proceeding, the respondent urges that it was still possible for him to seek to have the judgment vacated by the court which entered it.[5] But such relief might be long delayed by appeals, and in any event is an inadequate substitute for termination of illegal internment, if in fact and in law Stabler was a citizen because the New Jersey court lacked jurisdiction to cancel his certificate of naturalization. Indeed, if the writ of habeas corpus is not available, it would seem that the Attorney General has the power, however unlikely the exercise of it may be, to cause a citizen to be deported to Germany, before any direct attack upon a judgment revoking naturalization might be concluded. The Sunal case recognizes, 332 U.S. page 180, 67 S. Ct. 1591, that in exceptional circumstances the writ may still be entertained, as it was in Bowen v. Johnston, 306 U.S. 19, 59 S.Ct. 442, 83 L.Ed. 455.[6] See also Eagles v. United States ex rel. Samuels, 329 U.S. 304, where Mr. Justice Douglas said, at page 312, 67 S.Ct. 313, at page 317, 91 L.Ed. 308, that "Deprivation of petitioner of basic and fundamental procedural safeguards, an assertion of power to act beyond the authority granted an agency, and action without evidence to support its order, are familiar examples of the showing which is necessary."

Though not without doubt, we believe that the case at bar falls within this classification as an exceptional case.[7] In interning Stabler as an alien enemy the

Government relies upon a default judgment based solely on hearsay affidavits as to his place of residence on March 30, 1943. Three months earlier the United States had asserted that he then resided in Brooklyn,[8] and between these dates there had been no opportunity for him to change his residence, as he was continuously imprisoned in Michigan. While we do not doubt that naturalization may be revoked by a default judgment when it clearly appears that the court has jurisdiction over the person of the defendant, we think that a court should not assume to cancel the priceless benefits of citizenship when its jurisdiction to do so rests on hearsay so unconvincing as that presented to the New Jersey court. In Schneiderman v. United States, 320 U.S. 118, 122, 63 S.Ct. 1333, 1335, 87 L.Ed. 1796, the court ruled that citizenship "once conferred should not be taken away without the clearest sort of justification and proof." While it is true that Mr. Justice Murphy was there referring to proof concerning the merits of the controversy, not to proof as to jurisdictional facts, we can conceive of no reason for accepting less clear proof as to the court's jurisdiction. Under the circumstances of the case at bar, we think the need for the remedy afforded by the writ of habeas corpus is apparent and that this "precious safeguard of personal liberty" should be available to the relator.[9] Accordingly the judgment is reversed and the cause is remanded for determination of the question of the relator's residence at the time of the commencement of the New Jersey suit.

---

[5] Upon the argument we were told that Stabler made a motion for such relief in January 1947, which was denied in June of that year. This is no part of the present record. We express no opinion as to what effect, if any, it may have on further proceedings in the habeas corpus case. Cf. Klapprott v. United States, 3 Cir., 166 F.2d 273.

[6] At page 27 of 306 U.S., at page 446 of 59 S.Ct., Mr. Chief Justice Hughes wrote: "But it is equally true that the rule is not so inflexible that it may not yield to exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent."

[7] There is nothing to the contrary in United States ex rel. Knupfer v. Watkins, 2 Cir., 159 F.2d 675 for there jurisdiction existed in the court which cancelled the relator's citizenship.

[8] See note 2, supra.

[9] The quotation is from Bowen v. Johnston, 306 U.S. 19, 26, 59 S.Ct. 442, 83 L.Ed. 455.